Caruthers, J.,
delivered the opinion of the Court.
The complainants are the widow and only child of Austin M. Hamner, deceased, and file this bill for an account and *399 settlement of the estate of A. M. Hamner, against Samuel A., sr., the executor of the will, and against Samuel A., jr., to have declared void for remoteness a bequest to him.
Austin M. died in November, 1849, and this bill was filed 26th July, 1854. The defendant was qualified, and the will proved shortly after the death. The widow dissented in due time.
The executor returned no inventory of the estate, nor did he make any settlement with the clerk of the County Court.
The bill claims a large amount, and after various decrees and reports, finally recovered $5,004.97, and both parties appealed. .
The loose dealings between the two brothers for a number of years, together with the singular provisions of the will, make the case very complicated and exceedingly difficult to arrive at, and adjust the rights of the parties with any degree of certainty. An approximation to justice is all that can be attained in such cases.
The brothers were particularly attached to, and had unlimited confidence in each other. Their dealings were of eight or ten years duration, and without the evidence of any writings between them to explain their character and extent.
It seems that A. M. Hamner, in 1842, or early in 1843, was reduced almost, if not quite, to a state of insolvency, by his connection with one McQuiddy in the rope and bagging business. In 1843, a very short time after the termination of the rope and bagging concern, he entered into the dry goods business in the town of Columbia, in connection with T. L. McGee, under the partnership name of “ McGee & Co.” This firm was continued until September, 1844, when he purchased the interest of McGee for less than the capital the latter had paid in, and thereby become owner of all the assets of the firm, except McGee’s own, and his brother’s and sister’s accounts. He also assumed the entire liabilities of the firm. This business he carried on alone until January, 1845, continuing his accounts with his customers in the books of McGee & Co., as if the firm was still existing. Whether any *400 profit was made in this business either before or after the dissolution, does not clearly appear. McGee states that the debts of the firm could not have been paid by Hamner, either out of his own, or the means of the firm, and that if he paid them he must have borrowed the money. Yet they must have been paid in some way, as we hear nothing of those creditors, and the retiring partner has not been molested. This business was continued by A. M. Hamner until the 1st of January, 1845, when he sold out the entire stock of goods then remaining on hand, estimated at $>5,141.49, to John H. Ewen, in part pay for a stock of drugs, furniture, fixtures, &c., valued at $10,833.95, and entered into the drug and apothecary business. Then, or soon after, he took into partnership with him W. T. Hamner, his nephew, the son of S. A. Hamner, and the firm was styled “A. M. & W. T. Ham-ner.” This firm continued until about 1st March, 1847, when the health of Wm. T. entirely failed under consumption, and he sold out his interest to his partner, retired, and soon after died. Of the terms of this partnership, of the sale, or the profits made, wo have no information. The business was continued by Austin M. alone, until August, 1849, when he sold out to Polk & Green, for $6,493 — $2,000 in cash, and the balance in three equal annual payments of $1,497 each. He made his will on the 30th of October thereafter, and died the next month. The same books, of McGee & Co , were still used in the drug business, and they were not so kept as to show what was made or lost by the firm of A. M. & W. T. Hamner, or A. M. after his purchase of the interest of his partner. There is no doubt, however, but that some profit was made. At the dissolution, they commenced taking steps, to ascertain the state of the business, but the rapid failure of the health of Wm. T., suspended it, and it was never resumed or continued. It becomes important in the case to ascertain, if possible, the interest of Wm. T. upon his retiring from the concern, as defendant, Samuel A., his father and administrator, is entitled to whatever it may have been as his next of kin, he having died without wife or children. This is a full *401 history of the business connections and transactions of the testator. His executor has received the assets, which turn out to be a considerable amount, but has demands against the estate for a large amount, both on account of money advanced and as administrator and distributee of his son Wm. T. He proves his advances of money to the testator, by entries on the books of the latter. Before we consider the nature and amount of these demands, it may be well to notice the provision of the will in relation to them, which must have an important bearing on the whole case, in many of its aspects. It is the third clause, and is as follows:
“ Whereas, there are unsettled accounts and mutual claims of long standing between myself and my brother, Samuel A. Hamner, both in his own right, and as administrator, and next of kin of his son Wm. T., deceased, my former partner. And whereas, I have the most implicit confidence in the correctness and integrity of my said brother; and whereas, I am desirous that said accounts and claims between us should be settled by my brother Samuel A., inasmuch as our dealings are better known to, and understood by him, than they are, or could be by any other .person. Now, therefore, I will and desire that my brother Samuel A., as soon as may be convenient after my death, should take an account of all the matters and dealings between us, running back through several years, and ascertain the amount of my indebtedness to him; all of which will appear from his accounts, but more especially from my own books, and that of A. M. & W. T. Hamner; and that he appropriate so much of the means of my estate as may be sufficient to pay off and satisfy the said indebtedness which may be found against me in bis favor, both principal and interest.”
The executor 'having failed to make this settlement, so confidingly entrusted to him by his brother, for five .years after his appointment, he has been brought into a Court of Equity by this bill, where it must be done for the benefit of those interested in the estate. He claims in his answer, and it is shown by the books of McGee & Co., that in June, 1848, he paid to. *402 Austin M. $ 1,585, which was entered as the capital of A. M,, .and also as a credit to S. A. Hamner. This must be regarded as a loan to aid in setting up that business. After McGee retired, and the business was conducted by A. M. alone, it appears that other loans or advances of money weie made by Samuel A.
These items for loans and advancements to his brother, with the deductions for the current accounts of Samuel A. on the books, are perhaps set forth in the report correctly. And we see no sufficient objection to the amount of assets and disbursements, to authorize any further investigation as to them. And yet we are not able to affirm of the result arrived at in the final decree, whether it is correct or not. But we feel clear that the principle on which the account has been taken is wrong. This will make it necessary to recast it; but, perhaps this may be done upon the material already presented in the report. Of this, however, the parties will judge for themselves.
The account is taken upon the assumption that the partnership of A. M. & W. T. Hamner, still continued until the close of the business, by the sale to Polk & Green, in August, 1859, notwithstanding the sale of W. T., and his death early in 1857. There is no evidence that Samuel A. was ever connected with any part of the business, at any time, as a partner. We have not stopped to inquire what effect this error has had upon the interests of the parties to this suit, but it is certainly a wrong basis upon which to state the account. All we can do now is to settle the principles upon which the account must be taken, and leave the result to be worked out by the figures.
The money advanced by Samuel A. to his brother, at various times during the existence of the firm of McGee & Co., and after McGee retired, as well as the means furnished by him on the purchase of the drugs, in the notes on Littlefield, and in money, then, and after, must be regarded as loans, and not stock, as seems to have been held by the Chancellor. These must be the items of indebtedness referred to in the *403 will, and must be paid by force of this testamentary recognition and direction, with interest, after deducting the off-sets appearing on the books, and perhaps correctly set forth in the report of the master. It is only by force of the will that any of these demands can be allowed to the defendant, as they would otherwise, all be barred by the statute of limitations. They could not be allowed to him, either, on the principle of retainer, as we have held that this right is lost, unless exercised in a> settlement with the County Court within two years. But the will saves these claims in that respect also, on account of the powers given to the executor to make the settlement himself, without limitation of time. And considering the complicated nature of the business, we would be construing the power and discretion given too rigidly to exclude the defendant’s claims so emphatically provided for in the will, on the ground of the neglect and delay which has intervened. He will, therefore, receive a credit for the amount due him, ascertained as aforesaid, for money advanced to the testator. To this will he added the share of the profits of the drug business, to which his son was entitled at the time he sold out and retired. How much this was, it is impossible to ascertain vTith any degree of accuracy. He furnished no capital, and was young and inexperienced, and very soon lost his health.
It can hardly he presumed that his uncle, who was a physician, and a man of age and experience, would furnish all the capital, and give him half the profits. But it might have been so, on account of the aid he had, and expected to derive from his father Samuel A. Upon the whole, we see no better way to arrive at it, than to fix his part of the profits at $2,000, as claimed by the defendant in his answer, less the amount of his account upon the books, which is also shown in the report. This being settled, there will be no difficulty perhaps in adjusting the whole matter, by charging the defendant with ail the assets, deducting the disbursements in his administration, together with this last item, and that first stated, consisting of the money loaned with interest, as the will directs„ The *404 report of the master furnishes all these items, perhaps, with sufficient certainty to malte a final decree here.
The executor cannot be allowed any thing for his services on account of his failure to do his duty in returning an inventory, malting settlements, &c.
The item claimed for board will not be allowed, as it is not saved by the will, and therefore excluded upon the principles before stated.
The case also presents a question of construction on the fourth clause of the will of A. M. Hamner. He gives the estate to his nephew, Samuel A. Hamner, upon the death of his daughter “ without issue.” This is void for remoteness, as it is upon an indefinite failure of issue. 1 Meig’s Dig., 972. So the Chancellor held.
A decree will be drawn in conformity with this opinion.